# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA EX REL MURRAY P. FARMER, JOHN P MCAVOY AND MARCO ZAVALA,** | * * * * * |
| PLAINTIFFS, | * * |
| VS. | * * |
| **THE REPUBLIC OF HONDURAS, FONDO HONDURENO DE INVERSION SOCIAL (HONDURAN SOCIAL INVESTMENT FUND a/k/a FHIS), MOISES PINEL STARKMAN, Former Minister of FHIS, individually and in his official capacity, CARLOS ROBERTO FLORES FACUSSE, former President of the Republic of Honduras, Individually and in his official capacity, JUAN ORLANDO HERNANDEZ current President of Honduras, individually and in his official capacity, GABRIELA NUNEZ DE REYES, Secretary of State for Finance, individually and in her official capacity, WILDREDO CERRATO current Secretary of Finance Republic of Honduras, individually and in His official capacity, JOSE MANUEL ZELAYA ROSALES, current Secretary of Finance Individually and in his official capacity and MARIO RENE PINEDA VALLE, current Minister of FHIS, individually and in his official capacity, HECTOR RAMON TROCHEZ, Attorney general for the ROH ET AL., individually and in his official** | * CASE NO: 1:17-cv-00470-KD-N * * * * * * * * * * * * * * * * * * * * * * * * * * |

| | |
|---|---|
| **Capacity, PAUL CHRISTIAN TUEBNER,** | * |
| **Mission Director, USAID Honduras,** | * |
| **Individually and in his official capacity,** | * |
| **MAURICIO CRUZ, MDDI USAID,** | * |
| **individually and in his Official capacity,** | * |
| **BRAD FUJIMOTO, MDDI USAID,** | * |
| **individually and in his official capacity,** | * |
| **CARMEN. ZEMBRANA, SPS USAID,** | * |
| **Individually and in his official capacity,** | * |
| **CHRISTOPHER CUSHINGS, SPS** | * |
| **USAID, individually and in his official** | * |
| **capacity, ANNETTE ELIZABETH** | * |
| **TUEBNER, OAA USAID, individually** | * |
| **and in her official capacity, DEAN** | * |
| **WALTER OFM USAID, individually** | * |
| **and in his official capacity, RANDALL** | * |
| **PETERSON, A/DMD USAID,** | * |
| **Individually and in his official capacity,** | * |
| | * |
| **DEFENDANTS.** | * |

## AMENDED FALSE CLAIMS COMPLAINT

Comes now the Plaintiff, the United States of America, and Qui Tam Plaintiffs Murray P. Farmer, John P. McAvoy and Marco Zavala, and file this action pursuant to the False Claims Act, 31 U.S.C. Section 3729-33, as amended and to recover treble damages and civil penalties. Complaint against Defendants, the Republic of Honduras (ROH), Fondo Hondureño De Inversión Social (FHIS), Carlos Roberto Flores Facusse, Juan Orlando Hernandez, Gabriela Nunez De Reyes, Wildredo Cerrato, Jose Manuel Zelaya Rosales, Mario Rene Pindea Valle, Moises Starkman Pinel Starkman, Hector Ramon Trochez, Paul Christian Tuebner,

Mission Director, USAID Honduras, Mauricio Cruz, MDDI USAID, Brad Fujimoto, MDDI USAID, Carmen Zembrana, SPS USAID, Christopher Cushings, SPS USAID, Annette Elizabeth Tuebner, OAA USAID, Dean Walter OFM USAID, Randall Peterson, A/DMD USAID and would show unto the Court as follows:

## PARTIES

This is an action by Plaintiffs pursuant to 31 U.S.C. § 3729 et. seq. pertaining to False Claims against the United States of America. The transactions that are the subject of this complaint involve agencies of the United States, namely United States Agency for International Development (USAID), and payments made with United States funds.

1. Defendant Republic of Honduras (ROH) Government of Honduras (GOH) is a foreign government located in Honduras a country in Central America.

2. Defendant FHIS is an entity deconcentrated from the office of the President of the ROH and established by the ROH to fund its infrastructure and development programs in the ROH.

3. Defendant Carlos Roberto Flores Facusse is a citizen of the ROH and the former President of ROH.

4. Defendant Juan Orlando Hernandez is a citizen of the ROH and the current President of ROH.

5. **Defendant** Gabriela Nunez De Reyes is a citizen of the ROH and the former secretary of Finance for the ROH.

6. **Defendant** Wildredo Cerrato is a citizen of the ROH and the current secretary of Finance for the ROH.

7. **Defendant** Jose Manuel Zelaya Rosales is a citizen of the ROH and the former Minister of FHIS.

8. **Defendant** Mario Rene Pindea Valle is a citizen of the ROH and the current Minister of FHIS.

9. **Defendant** Moises Pinel Starkman is a citizen of the ROH and a former Minister of FHIS.

10. **Defendant** Hector Ramon Trochez is a citizen of the ROH and former Attorney General ROH.

11. Paul Christian Tuebner is a citizen of the United States of America and was employed with USAID as Honduras Mission Director in 2005.

12. Mauricio Cruz is a citizen of Honduras and employed with USAID in 2005.

13. Brad Fujimoto is a citizen of the United States of America and employed with USAID Honduras in 2005.

14. Carmen Zambrana is a citizen of the United States of America and employed with USAID since 2005.

15. Christopher Cushings is a citizen of the United States of America and was employed with USAID since 2005.

16. Annette Elizabeth Tuebner is a citizen of the United States of America and was employed with USAID since 2005.

17. Dean Walter is a citizen of the United States of America and has been employed with USAID since 2005.

18. Randall Peterson is a citizen of the United States of America and has been employed with USAID since 2005.

19. Qui Tam Plaintiff and Relator Murray P. Farmer has direct and independent knowledge of the allegations contained herein and is an "original source".

20. Qui Tam Plaintiff and Relator John P. McAvoy is a retired Foreign Service Officer who served as a diplomat in Honduras and former USAID Contracting Officer. He has direct and independent knowledge of the allegations contained herein and is an "original source".

21. Qui Tam Plaintiff and Relator Marco Zavala is a retired USAID liaison with FHIS and has direct and independent knowledge of the allegations contained herein and is an "original source".

## JURISDICTION AND VENUE

22. Jurisdiction over the Defendants is germane pursuant to 31 U.S.C. § 3729 and 3730 et. seq. and 28 U.S.C. § 1605 et. seq. as the False Claims, among other things, constitute commercial activity taken by Defendants and directly impacted the United States of America.

23. Venue is proper in this judicial district pursuant to 31 U.S.C. § 3732(a) and pursuant to 28 U.S.C. § 1391(b) and 1395(a)

## FACTUAL ALLEGATIONS

24. The United States Agency for International Development hereinafter, USAID is an independent Federal Government agency that receives overall foreign policy guidance from the Secretary of State. USAID was created in 1980 by Executive Order upon the signing of the Foreign Assistance Act of 1961 into law. USAID has assumed the task as primary United States Agency to implement and oversee the distribution of the United States grants and funds and extend assistance to countries recovering from disaster, trying to escape poverty, and engaging in democratic reforms. Over the past ten (10) years (and longer), the United States Congress has enacted legislation and appropriated funds to assist ROH in emergency aid and humanitarian projects.

25. The stated mission of USAID is to support long term and equitable economic growth and to advance United States foreign policy objectives by

supporting economic growth, agricultural development, global health, conflict prevention and developmental relief. USAID has country offices known as missions, in over seventy (70) countries worldwide.

26. The primary method used by USAID to provide financial aid to foreign governments in such emergency and humanitarian aid and relief is through Host Country Contracts and/or Bilateral Grant Agreements.

27. To receive USAID aid and relief funds, the foreign government or Grantee must meet certain statutory and regulatory criteria established by the United States.  One such criteria (express and/or implied) is that the recipient of the United States grant must be a foreign government.

28. The Host Country Contract is one method used by USAID to implement aid projects to foreign governments. In order to fund a project, the foreign government must undergo a strict review by USAID and the Department of State. USAID must complete the Host Country Contract checklist as established in the Special Objective Grant Agreement (SOAG). USAID must also certify that the foreign government is not prohibited from receiving US funds. USAID is also required to certify that the foreign government has the capability to undertake the procurement actions in accordance with USAID policies and procedures. USAID must issue a certification that the foreign government has the administrative capability to solicit, audit and construct a project. The USAID certification also

requires the foreign government to have the financial ability and closeout mechanism to meet the policies and procedures of USAID.

29.     In 1998 the Honduras located in Central America, was devastated by Hurricane Mitch. A national emergency was declared in Honduras. The ROH sent out a worldwide plea for assistance and emergency relief. The United States responded and thru Congressional action appropriated $250 million in US dollars for emergency and reconstruction aid.

30.     In a memorandum dated March 19, 1998, USAID made an affirmative determination of Host Country contracting based upon an assessment that the Honduran Social Investment Fund, FHIS, possessed the capability and integrity to carry out the procurement actions financed by USAID from solicitation to audit and closeout (Ex. 1). FHIS was created by the National Congress of ROH Decree Number 12-90, on February 28, 1990. In the Act, FHIS was designed as an entity deconcentrated from the Office of the President of the Republic of limited duration endowed with legal standing (EX. 2).

31.     Special Objective Grant Agreement (SOAG) No. 522-0410 was entered between the GOH/Grantee and the USA acting thru USAID on June 9, 1999. The SOAG created the Hurricane Reconstruction Program (HRP). The SOAG contained two preconditions to disbursement of funds. Section 5.1 (a) required the Procurador General of the Republic to provide a legal opinion that the

SOAG constituted a valid and legally binding obligation of the Grantee and has been duly authorized… and executed on behalf of the Grantee. Section 6.3 of the SOAG declared that FHIS is a unit of the GOH and accordingly all actions taken by members of FHIS… will be considered to be actions by or on behalf of the Grantee and FHIS. Section 6.3(a) requires FHIS to include a provision similar to Section 6.3 in its contracts or agreement with any organization engaged by FHIS…

32. On September 20, 1999, the legal opinion of the Procurador General precondition was met thru Implementation Letter (IL) No. 1. (Affidavit of Larry Byrne EX. 3)

33. On February 7, 2000, the Secretary of State for Finance in a Delegation of Authority document falsely represented that the Honduran Social Investment Fund,…is one of the government institutions responsible for implementation of the activity component…In addition, Moises Pinel Starkman, Minister of FHIS was received authorization from the Secretary of State to sign on behalf of the ROH.

34. On April 14, 2000, an advertisement was released thru the Commerce Business Daily which stated the GOH acting through FHIS with financial assistance from USAID was inviting contractors to participate in the bidding process for reconstruction and expansion of twenty-two (22) water, sewer and drainage projects in thirteen (13) Honduran municipalities. (EX. 4).

35. On June 21, 2000, DRC a US contractor based in Mobile, Alabama, signed a contract to perform project PDM 001-2000 as the lowest bidder. In the contract, the ROH falsely and fraudulently represented that FHIS was a non-concentrated branch of the Presidency of the Republic. The contract also falsely and fraudulently omitted the provision as required by section 6.3 of the SOAG. (EX. 5).

36. In 2001, DRC satisfactorily completed the contract. However, GOH, FHIS or USAID failed to compensate DRC in accordance with the contract. As a result DRC lost over $30,000,000.00 and was unable to remain in business. The closure of DRC resulted in three hundred (300) employees in Mobile, Alabama losing employment.

37. During the period of July 21, 2000 and May 10, 2002, DRC prepared invoices in Mobile, Alabama and submitted invoices to FHIS by mail. FHIS would process, approve and certify the invoices of DRC for payment under the PDM 001-2000 in the Honduras. FHIS would then submit the false certifications to USAID in Washington, DC. Based on the false certifications from FHIS, USAID would make electronic payment to DRC to a bank located in Mobile, Alabama. Because FHIS and the other Defendants made false statements and certifications to the USAID, the Defendants are liable to USAID pursuant to the False Claims Act.

38. In May 2010, during the course of arbitration litigation between FHIS and DRC, the affidavits of Juan Jose Urquiza, engineer of projects for FHIS and Julio Rendon Cano, a Honduran lawyer and professor of the Law Faculty of the National Autonomous University of Honduras were submitted to the court on behalf of the ROH. Both affiants concluded that FHIS was not a part of the ROH. On October 23, 2014 a United States District Judge ruled that FHIS was a separate legal identity from the ROH and had no liability for payment to DRC. In order to induce the United States to give aid to ROH, ROH has represented that it is eligible to receive such funds through FHIS; it (and therefore FHIS) meets the United States established criteria and statutory and regulatory (express and/or implied) certifications; that FHIS is a representative, unit and agency of the ROH; and FHIS is authorized to act on behalf of and bind the ROH.

39. The statements made by ROH and FHIS that it/they were eligible to receive aid and grants from the United States, that FHIS was a unit and representative of ROH, and that FHIS's action bind ROH, were false and ROH and FHIS knew they were false when made.

40. In fact, FHIS, on behalf of ROH, has received USAID funds for relief projects and not used the funds to pay for the relief services for which the USAID ear-marked the funds. Honduran Defendants have knowingly made false statements as to their eligibility in order to receive grants and funds from the

United States.  The Honduran Defendants caused false claims to be presented to the United States.

41.  The ROH and FHIS Defendants have knowingly made false certifications of express and/or implied statutory and regulatory compliance with United States criteria to induce the United States to give grants to Defendants.

42.  The ROH and FHIS Defendants knew that compliance with the United States criteria for eligibility to receive United States grants was a condition precedent to their receiving United States aid, relief and grants.

## COUNT 1

43.  The Plaintiffs hereby incorporate by reference the allegations set forth in paragraphs 1-42.

44.  Based upon these false statements and false certifications for payment, the United States has paid to or on behalf of the Honduran Defendants in excess of $300,000,000.00.

45.  The Defendants are therefore liable to the US Government for three (3) times the amount of these damages in the amount of $900,000,000.00 plus a civil penalty of between $5500.00 and $11,000.00 for each false statement and fraudulent certification for payment by the Defendants in the amount of $1,000,000,000.00, and for attorney fees, costs and interest.

## COUNT II

46. The Plaintiffs hereby incorporate by reference the allegations set forth in paragraphs 1-45 above.

47. The Defendants have been unjustly enriched by reason of the Governments payment of funds to or on behalf of the Defendants. The Defendants are liable to the United States for the amount of the unjust enrichment for attorney fees, costs and interest.

48. But for Defendants' false statements and fraud in the inducement, the United States would not have made grants to Defendants.

49. Each certificate, each grant application, each claim, and each payment request constitutes a separate false claim.

50. Defendants conspired together to present false claims to the United States and receive funds and grants from the United States.

## COUNT III

51. The Plaintiffs hereby incorporate by reference the allegations set forth in paragraphs 1-50.

52. On or about December 5, 2000, a letter of commitment was prepared by USAID at the request of the Government of the Republic of Honduras. The ROH or GOH was acting through FHIS. In the letter of commitment, USAID

guaranteed the payment of $17,667,966.96 pursuant to construction work for the Group I contract.

53. The letter of commitment provided that with regard to any amendment of the contract which affects the level and or use of USAID funds…. Payment hereunder is contingent upon written approval by USAID.

54. Any extension beyond the original expiration date, July 14, 2001, greater than a year required approval from USAID office in Washington DC, USA.

55. On or about May 10, 2005, the Defendants FHIS and USAID employees, Paul Christian Tuebner, Mission Director, USAID Honduras, Mauricio Cruz, MDDI USAID, Brad Fujimoto, MDDI USAID, Carmen Zembrana, SPS USAID, Christopher Cushings, SPS USAID, Annette Elizabeth Tuebner, OAA USAID, Dean Walter OFM USAID, Randall Peterson, A/DMD USAID (hereinafter USAID conspirators) corruptly, falsely and fraudulently conspired together to present a false and fraudulent claim to the United States and to have funds and grants from the United States fraudulently transferred and diverted to the Honduran Defendants.

56. On or about May 10, 2005 the USAID and FHIS/ROH conspirators/ Defendants corruptly, falsely and fraudulently agreed to prepare an implementation letter which removed, diverted and transferred $2,799,392.00 from the Group I contract signed between DRC Inc. and FHIS. USAID was not a party to the Group

I project. USAID role was not as a party to the contract. The sole role of USAID was only to guarantee payment. The conspirators corruptly redirected $100,000.00 from the $2,799,392.00 in US funds and diverted those funds to provide $100,000.00 to FHIS for legal expenses. Funds designated for the Group I contract were specifically designated for the design and construction of rural water and sanitation systems. The remaining $2,699,392.00 was then diverted and transferred to a different construction project and extended the completion date in violation of the letter of commitment. The Group I contract was completed in 2001.

57. On or about May 10, 2005, the USAID and ROH Defendants conspired and without proper authorization, to use a method to change or alter the funding of designated projects thru a USAID policy and procedure known as an Implementation Letter or IL. IL No. 190 and No. 135 were fraudulently, corruptly and falsely used to divert funds to reimburse FHIS for $100,000.00 in legal fees and expenses related to the arbitration process involving disputes concerning the Group I contract.

58. The ILs were issued without proper authorization and were used to corruptly, falsely and fraudulently violate the Foreign Assistance Act of 1961, the False Claims Act and the Anti Deficiency Act 31 USC 1341et. seq..

**WHEREFORE**, Plaintiffs pray that judgment be entered in its favor and against the defendants as follows:

  (a) On Count I, the amount treble the Plaintiffs actual damages plus a civil penalty for each false invoices and certifications that Defendants submitted to the United States for payment.

  (b) On Count II, the amount by which the Defendants have been unjustly enriched by the United States payment to or on behalf of the Defendants for attorney fees, costs and interest.

  (c) On Count III, the amount treble the Plaintiffs actual damages plus a civil penalty for each false invoice and certifications that the Defendants submitted for payment to the United States for payment.

  (d) United States of America, be awarded judgment against Defendants for damages sustained, plus civil penalties of not less than $5,000.00 and not more than $11,000.00 per false claim or act, plus three times the amount of damages which Plaintiff, United States of America, sustained as a result of Defendants' false and/or fraudulent claims, or other violations of Title 31 U.S.C. 3729 et. seq.; in the amount of $1,000,000,000.00.

  (e) Plaintiff, United States of America, and Qui Tam Plaintiffs be awarded all costs, related expenses and reasonable attorney fees.

  (f) Qui Tam Plaintiffs be awarded a percentage of all amounts awarded or collected on behalf of Plaintiff, United States of America, against Defendants; and

  (g) Plaintiffs be awarded such further and different relief, the premises considered.

**PLAINTIFFS REQUEST TRIAL BY JURY**

*/s/ Willie J. Huntley, Jr.*_____
Attorney for Plaintiffs
HUNTW5746


OF COUNSEL:

THE HUNTLEY FIRM, P.C.
Post Office Box 370
Mobile, Alabama 36601
251-434-0007
huntfirm@bellsouth.net