# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>*ex rel.*, MURRAY FARMER, *et al.*, )<br>  )<br>   Plaintiffs, )<br>  )<br>vs. )<br>  )<br>THE REPUBLIC OF HONDURAS, *et al.*, )<br>  )<br>   Defendants. ) | CIVIL ACTION NO. 17-00470-KD-N |

## ORDER

This False Claims Act action is before the Court on the motion to dismiss filed by the United States and brief in support; the response filed by Relators Murray Farmer, John P. McAvoy, and Marco Zavala; the United States reply; and additional briefing. (docs. 55, 55-1, 66, 71, 77).[1] The motion was heard on January 16, 2020. Present for the hearing were Jay D. Majors, counsel for the U.S. Department of Justice; Rachel Cochran, counsel for the United States Agency for International Development; and Willie J. Huntley, Jr., counsel for the Relators. Upon consideration, and for the reasons set forth herein, the motion to dismiss is **GRANTED**.

## I. Background

After Hurricane Mitch devastated Honduras in 1998, the United States responded to Honduras' plea for assistance and emergency relief and appropriated $250 million in aid. The United States Agency for International Development (USAID) distributed the aid via grants and contracts. One contract was awarded to DRC, Inc. for reconstruction and expansion of water, sewer and drainage projects. However, DRC, Inc. alleges that after completion, Defendant

---

[1] In light of this ruling, no further briefing is required from the United States.

Republic of Honduras, Fondo Hondureno de Inversion Social (FHIS) or USAID failed to fully compensate DRC, Inc. DRC, Inc. filed two claims in the Court of Federal Claims in an effort to be compensated. In a separate suit the United States alleged that DRC, Inc. filed false claims. These suits were settled by each side agreeing to drop their claims.

DRC, Inc. then pursued their claim against FHIS and in 2009 obtained an arbitration award of $51 million from Honduran arbitrators under Honduran law. However, in 2013 the Supreme Court of Honduras refused to confirm the arbitration award. DRC, Inc. also filed a suit against the Republic of Honduras. In <u>DRC, Inc. v. Republic of Honduras</u>, 71 F. Supp. 3d 201 (D.D.C. 2014), DRC sought to enforce, against the Republic of Honduras, the arbitration award that DRC had obtained against FHIS. The Court found that FHIS was a "juridically independent entity" with a "presumption of separateness from the Republic [of Honduras] for purposes of determining whether the Court has subject matter jurisdiction." Id. at 214. Accordingly, the Court determined that because the Republic of Honduras was not a party to the arbitration, they were entitled to sovereign immunity. The Court then dismissed the action for lack of subject matter jurisdiction. Id.

The Relators initially filed this False Claims Act action against the Republic of Honduras; FHIS; Moises Starkman, former Minister of FHIS; Carlos Roberto Flores, former President of the Republic of Honduras; Juan Orlando Hernandez, current President of Honduras; Gabriela Nunez de Reyes, Secretary of State for Finance; Wilfredo Cerrato current Secretary of Finance Republic of Honduras; Jose Manuel Zelaya Rosales, current Secretary of Finance; and Mario Rene Pineda Valle, current Minister of FHIS; and Hector Ramon Trochez, Attorney General for the Republic of Honduras (doc. 1). The Relators alleged that the Honduran government falsely certified that FHIS was a unit of the Honduran government whereas to

qualify FHIS to receive aid from the United States. The Relators base their claim of falsity on the 2014 District of District of Columbia decision wherein the Court found FHIS to be a separate and independent entity. The Relators thus alleged that the United States has been defrauded. And because FHIS was not eligible to receive the aid, all claims submitted since 2000 by contractors to FHIS, and in turn submitted to USAID and paid by the United States, are false. Therefore, the Honduran Defendants are liable to the United States for damages and penalties totaling approximately $1 billion.

After the United States declined to intervene (doc. 16), the Relators filed an amended complaint (doc. 21). Substantially similar allegations are alleged against the Honduran Defendants as in the original complaint. However, the Relators also add USAID employees as Defendants. Specifically, the Relators raise claims against Paul Christian Tuebner, Mission Director, USAID, individually and in his official capacity; Mauricio Cruz MDDI USAID, individually and in his official capacity; Brad Fujimoto, MDDI USAID, individually and in his official capacity; Carmen Zembrana, SPS USAID, individually and in his official capacity; Christopher Cushings, SPS USAID, individually and in his official capacity; Annette Elizabeth Tuebner, OAA USAID, individually and in her official capacity; Dean Walter OFM USAID, individually and in his official capacity; and Randall Peterson A/DMD USAID, individually and in his official capacity (doc. 21).

With respect to the USAID employee Defendants, the Relators allege that they "corruptly, falsely and fraudulently conspired together to present a false and fraudulent claim to the United States and to have funds and grants from the United States fraudulently transferred and diverted to the Honduran Defendants." (Id., p. 14). The conspiracy is alleged to have occurred in May 2005 (Id., p. 14-15). The Relators allege that these USAID employees and the

Honduran Defendants allegedly diverted $2.7 million from a contract between DRC, Inc. and FHIS, then diverted $100,000 of the $2.7 million to FHIS to pay legal expenses, and then diverted the remaining $2.6 million to a different construction project. (Id., p. 15).

The United States filed a motion to dismiss the action (doc. 55). The United States disagrees with the Relator's assessment that FHIS was not qualified to receive aid from the United States and also disagrees that the Republic of Honduras falsely certified that FHIS was a unit of the Republic of Honduras.

The Relators filed their response in opposition (doc. 66). The Relators first argue that the United States states does not have standing to file the motion since they did not intervene. Next the Relators argue that the United States must have a valid purpose to dismiss the case.

As required by 31 U.S.C. § 3730(c)(2)(A), the Relators were notified by the United States that the motion had been filed and the Court provided the Relators "with an opportunity for hearing on the motion" in January 16, 2020. At the close of the hearing, the Court allowed additional briefing on specific issues as set forth on the record.

## II. Statement of the law

"The False Claims Act enables private citizens to recover damages on behalf of the United States by filing a qui tam action against a person who (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment or approval; [or] (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." Urquilla-Diaz v. Kaplan Univ., 780 F.3d 1039, 1045 (11th Cir. 2015) (citing 31 U.S.C. § 3729(a)(1)-(2)). "In a *qui tam* action, the relator 'pursues the government's claim

4

against the defendant, and asserts the injury in fact suffered by the government.'" United States ex rel. Hunt v. Cochise Consultancy, Inc., 887 F.3d 1081, 1086-1087 (11th Cir. 2018), cert. granted sub nom. Cochise Consultancy, Inc. v. U.S. ex rel. Hunt, 139 S. Ct. 566 (2018), and aff'd, 139 S. Ct. 1507 (2019) (citation omitted). "In bringing a *qui tam* action, the relator 'in effect, su[es] as a partial assignee of the United States.'" Id. (quoting Vt. Agency of Nat. Res. v. United States ex rel. Stevens, 529 U.S. 765, 773 n.4, 120 S. Ct. 1858 (2000) (emphasis omitted)) (bracketed text in original).

Relevant to this action, a claim is defined as a request for payment that "(i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government-- (I) provides or has provided any portion of the money or property requested or demanded; or (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded[.]" 31 U.S.C. § 3729(b)(2). "Any person who 'knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval' or who 'knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim' is liable under the False Claims Act." United States v. HPC Healthcare, Inc., 723 Fed. Appx. 783, 788 (11th Cir.), cert. denied sub nom. U.S. ex rel. Chase v. Chapters Health Sys., Inc., 139 S. Ct. 69 (2018) (footnote omitted) (citing 31 U.S.C. § 3729(a)(1)(A)-(B)).

Generally, false claims are claims that may wrongfully cause the United States to disburse funds. United States ex rel. Campie v. Gilead Sciences, Inc., 862 F.3d 890 (9th Cir. 2017). A claim may be false if based on a false representation that fraudulently induces the United States to provide funds or award contracts. United States ex rel. Reeves v. Mercer

Transportation Co., Inc., 253 F. Supp. 3d 1242, 1252–53 (M.D. Ga. 2017) (citing U.S. ex. rel. Marcus v. Hess, 317 U.S. 537, 63 S. Ct. 379 (1943)).  Overall, "'[l]iability under the False Claims Act arises from the submission of a fraudulent claim to the government, not the disregard of government regulations or failure to maintain proper internal procedures.'" Urquilla-Diaz, 780 F.3d at 1045 (quoting Corsello v. Lincare, Inc., 428 F.3d 1008, 1012 (11th Cir. 2005)). "Simply put, the '*sine qua non* of a False Claims Act violation' is the submission of a false claim to the government." Id. (quoting United States ex rel. Clausen v. Lab. Corp. of Am., 290 F.3d 1301, 1311 (11th Cir. 2002)).

"If the United States decides to intervene, the government acquires 'primary responsibility for prosecuting the action,' although the relator remains a party." United States ex rel. Hunt v. Cochise Consultancy, Inc., 887 F.3d at 1087 (quoting 31 U.S.C. § 3730(c)(1)).  "In contrast, if the United States declines to intervene, the relator may proceed with the action alone on behalf of the government, but the United States is not a party to the action." Id. (citing 31 U.S.C. § 3730(c)(3)).  However, the court may permit the United States to intervene "upon a showing of good cause."  31 U.S.C § 3730(c)(3).

"Although the United States is not a party to a non-intervened case, it nevertheless retains a significant role in the litigation. The government may request to be served with copies of all pleadings and deposition transcripts, seek to stay discovery if it 'would interfere with the Government's investigation or prosecution of a criminal or civil matter arising out of the same facts,' and veto a relator's decision to voluntarily dismiss the action." Hunt at 1087 (citing 31 U.S.C § 3730(b)(1), (c)(3), (c)(4)).  When a false claims action is brought by a "private person" the "action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting."  31 U.S.C. § 3730(b)(1).

Additionally, the "Government may dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion." 31 U.S.C.§ 3730(c)(2)(A).

### III. Whether the United States is required to intervene before filing a motion to dismiss

The Relators argue that the United States is not a party because it did not proceed with the action and has not been granted leave to intervene upon a showing of good cause. (doc. 66, p. 12-14, 16-17). The Relators argue that because the United States is not a party, it does not have standing to file the motion to dismiss. (Id.) The United States argues that it need not intervene before moving to dismiss the action (doc. 71, p. 1-3).

In United States v. Everglades College, Inc., 855 F. 3d 1279 (11th Cir. 2019), the Court of Appeals for the Eleventh Circuit addressed the issue of whether the United States must successfully intervene before settling a *qui tam* action. The relators were dissatisfied with the outcome at trial and appealed. While the appeal was pending, the United States moved to intervene for the purpose of settling the action. The relators argued that the district court erred by allowing the United States to intervene. The Eleventh Circuit found that the United States was not required to intervene to settle the action and that "[b]ecause intervention was not required, we need not concern ourselves with whether the requirements" to intervene had been met. Id. at 1285-1286. The Eleventh Circuit found that the United States right to settle **or dismiss** was not conditioned upon "formally intervening in the case", explaining as follows:

> A straightforward reading of the text supports this conclusion. First, subsection (b)(2) expressly links intervention to the government's decision to "proceed with the action." § 3730(b)(2) ("The Government may elect to *intervene* and *proceed with the action*...." (emphasis added)). Second, in subsections

7

> (c)(2)(A) and (B), the statute spells out the circumstances in which the government may settle or dismiss a *qui tam* case, and neither subsection conditions the government's rights on formally intervening in the case. Instead, they provide in unequivocal terms that "the Government may settle [or dismiss] the action with the defendant notwithstanding the objections of the person initiating the action." § 3730(c)(2)(A), (B) (emphasis added). In the context of dismissals, the court need only "provide[ ] the [relator] with an opportunity for a hearing," § 3730(c)(2)(A); and with settlements, the court must "determine[ ], after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances," § 3730(c)(2)(B). We decline to import the good-cause intervention requirement from subsection (c)(3) into these provisions which specifically govern dismissals and settlements.

United States v. Everglades College, Inc., 855 F.3d at 1286.

Relevant to this action, and although arguably *in dictum*, the Eleventh Circuit further explained:

> And in the closely related context of dismissals, other circuits have also declined to require good cause or formal intervention. For instance, the Tenth Circuit in Ridenour v. Kaiser–Hill Co. focused on the plain statutory language, noting that it could "identify nothing in the language of [the subsection on dismissals] to suggest the authority of the Government to dismiss a *qui tam* action is dependent upon prior intervention in the case." 397 F.3d 925, 933 (10th Cir. 2005); see also Swift v. United States, 318 F.3d 250, 251–52 (D.C. Cir. 2003) (finding intervention necessary "only if the government wishes to 'proceed with the action' " and "[e]nding the case by dismissing it is not proceeding with the action"); Riley [v. St. Luke's Episcopal Hosp, 252 F.3d [749,] at 753 (5th Cir. [2001]) (noting that "the government retains the unilateral power to dismiss an action 'notwithstanding the objections of the person' " (quoting Searcy v. Philips Elecs. N. Am. Corp., 117 F.3d 154, 160 (5th Cir. 1997))).

Id.

In view of the Eleventh Circuit's decision, the Court finds that the United States was not required to move to intervene and establish good cause for intervention, before filing a motion to dismiss.

**IV. <u>The United States' motion to dismiss</u>**

The federal courts have applied two standards for dismissal. Some courts have found that the United States has an unfettered right to dismiss, see <u>Swift v. United States</u>, 318 F. 3d 250, 251 (D.C. Cir. 2003), while other courts have found that the United States may dismiss only after identifying a valid government purpose and a rational relation between dismissal and accomplishing that purpose. Under the latter analysis, if the United States meets these requirements, the burden shifts to the Relators to show that dismissal is fraudulent, arbitrary and capricious or illegal. If the Relators cannot make this showing, dismissal is appropriate. See <u>United States *ex rel*. Sequoia Orange Co. v. Baird-Neece Packing Corp</u>., 151 F. 3d. 1139, 1145 (9th Cir. 1998); <u>Ridenour v. Kaiser-Hill Co</u>., 397 F. 3d 925, 932-933 (10th Cir. 2005).

The United States argues that as the real party in interest, the False Claims Act permits it to dismiss a *qui tam* action even if the Relators object (doc. 55-1, pgs. 3-13). The United States points out that while the Eleventh Circuit has not specifically decided the issue, it has indicated in dictum that the decision to dismiss is at the sole discretion of the Executive Branch and without a judicial determination of reasonableness. (Id.) Alternatively, the United States argues that it has identified a valid governmental purpose and that there is a rational relation between dismissal and accomplishing that purpose (Id., p. 13-19).

The Relators oppose dismissal of the action and argue that the Court should apply the two-step analysis (doc. 66). They argue that they can meet their burden to show that the dismissal is unrelated to the merits, vague, arbitrary and capricious. They argue that the United States' proffered purposes for dismissal "are only a pretext for the Governments true motivation which is animus towards the relator." (Id., p. 3, 15-24)

Some guidance regarding the appropriate standard is found in United States v. Everglades College, Inc. The Eleventh Circuit compared the statutory provision for dismissal with that for settlement and found that "[w]hen the government seeks to dismiss the FCA action, the statute does not prescribe a judicial determination of reasonableness, see 31 U.S.C. § 3730(c)(2)(A); whereas when the government wants to settle a *qui tam* claim, the court must find the settlement is 'fair, adequate, and reasonable' § 3730(c)(2)(B) . . . Because of this differential statutory treatment, government-obtained FCA settlements do not receive the same level of deference that applies to dismissals." 855 F. 3d at 1288. In reaching this distinction, the Eleventh Circuit cited United States ex rel. Schweizer v. Oce N.V., 677 F.3d 1228, 1233–34 (D.C. Cir. 2012) for its "thorough analysis of why FCA settlements warrant more rigorous judicial review than dismissals." Id.

In Schweizer, the D. C. Circuit explained that "[w]e have held that § 3730(c)(2)(A) provides the government with 'an unfettered right to dismiss' *qui tam* claims, . . . and that the only function of a hearing under § 3730(c)(2)(A) 'is simply to give the relator a formal opportunity to convince the government not to end the case.'" 677 F.3d at 1233 (citing Swift, 318 F.3d at 252-253 and United States ex rel. Hoyte v. Am. Nat'l Red Cross, 518 F.3d 61, 65 (D.C. Cir. 2008)).

The Eleventh Circuit's reliance upon Schweizer indicates that it agrees that the United States has an "unfettered right to dismiss" a *qui tam* action. Id. In Schweizer, the court explained that as opposed to a settlement, "in a pure dismissal as in Swift, the relator has no protection: he is not entitled to compensation or judicial review of the government's decision." 677 F.3d at 1234. In Swift, the court explained as follows:

> We hesitate to adopt the *Sequoia* test. It may be that despite separation of powers, there could be judicial review of the government's decision that an

> action brought in its name should be dismissed. Cf. United States v. Cowan, 524 F.2d 504, 513 (5th Cir.1975). But we cannot see how § 3730(c)(2)(A) gives the judiciary general oversight of the Executive's judgment in this regard. The section states that "The Government"—meaning the Executive Branch, not the Judicial— "may dismiss the action," which at least suggests the absence of judicial constraint. To this must be added the presumption that decisions not to prosecute, which is what the government's judgment in this case amounts to, are unreviewable. Cf. Heckler v. Chaney, 470 U.S. 821, 831–33, 105 S.Ct. 1649, 1655–57, 84 L.Ed.2d 714 (1985); Newman v. United States, 382 F.2d 479, 480 (D.C.Cir.1967). Reading § 3730(c)(2)(A) to give the government an unfettered right to dismiss an action is also consistent with the Federal Rules of Civil Procedure. Rule 41(a)(1)(i) permits a plaintiff to dismiss a civil action "without order of the court" if the adverse party has not yet filed an answer or a motion for summary judgment. A dismissal pursuant to Rule 41(a)(1)(i) is not subject to judicial review. See Randall v. Merrill Lynch, 820 F.2d 1317, 1320 (D.C. Cir. 1987).

Swift v. United States, 318 F.3d 250, 252–253 (D.C. Cir. 2003).

In this action, the Court has returns of service for five of the eight USAID employee Defendants (docs. 39, 40, 49, 60, 70). The summons and complaint issued to the Republic of Honduras has been returned marked "return to sender" (doc. 72). The Court does not have a return of service for the summons and complaint issued to FHIS. The summons and complaints have not issued as to the remaining Honduran Defendants. At this point, no answer or motion for summary judgment has been filed. Thus, as in Swift, the action is at an early procedural stage, and dismissal pursuant to 31 U.S.C. § 3730(c)(2)(A) is appropriate. See also Fed. R. Civ. P. 41(a)(1)(A)(i) (providing for voluntary dismissal by the plaintiff without a court order if a notice of dismissal is filed "before the opposing party serves either an answer or a motion for summary judgment").

Moreover, two long-standing principles weigh in favor of the United States' capacity to dismiss this action. First, the power to pursue litigation **on behalf** of the United States is given to the Executive Branch pursuant to Article II of the United States Constitution. U.S. Const. art.

II, § 3 (The President "shall take Care that the Laws be faithfully executed."). Moreover, prosecutorial decisions of the Executive Branch, civil or criminal, are generally unreviewable by the Judicial Branch. Heckler v. Chaney, 470 U.S. 822, 831 (1985). Accordingly, the Court finds that the United States has the unfettered right to dismiss the *qui tam* action.

However, as the Eleventh Circuit recognized "some circuits have said the government may dismiss a relator's claim so long as dismissal is rationally related to a valid government purpose." Everglades, 855 F. 3d at 1288 (citing Ridenour, 397 F. 3d at 936; Sequoia, 151 F. 3d at 1145). Therefore, in abundance of caution the Court will consider the two-step analysis found in Ridenour and Sequoia.

The United States argues that it has satisfied the elements of Sequoia and has shown a valid governmental purpose for dismissal and a rational relationship between dismissal and accomplishment of the purpose (doc. 71, p. 2-4). The United States first argues that dismissal is warranted because the Relators' allegations lack merit and should not be prosecuted in the United States' name. In other words, dismissal would accomplish the valid government purpose of declining to litigate a non-meritorious claim. The United States asserts that FHIS has made no misrepresentations regarding its ability to contract with USAID, and therefore, the material element of falsity is not present. The United States asserts that USAID appropriately determined that FHIS is a "quasi-independent public agency" and "part of the Honduran government", thus USAID may contract with FHIS (Id., p. 13-15) The United States disagrees with the Relators that an entity like FHIS must either be a fully integrated agency of the government, otherwise it is private (doc. 71, p. 4). Instead it is the United States position that "FHIS is a fully public entity, but one with a separate legal identity from the Government of Honduras." (Id.)

Essentially, the Relators want this Court to find that the United States position on FHIS' status is wrong, the United States decision to give aid to Honduras through FHIS was wrong, and that the USAID employees who made the decisions and facilitated the aid are liable for this wrong decision. However, a *qui tam* False Claims Act case is not an appropriate vehicle to challenge official actions of a government agency. As explained above, a *qui tam* action is brought on behalf of the United States when the United States has been defrauded. The United States is adamant that it has not been defrauded. The Court finds that because the United States does not believe that the Relators suit has merit, the decision to dismiss is rational.

The United States also argues that it has a valid government purpose because it has an "interest in avoiding negative impact on its diplomatic relationship" with the Republic of Honduras and avoiding possible interference with USAID's mission, if the litigation continues (doc. 55-1, p. 15-16). The United States also points out that the Republic of Honduras may have a sovereign-immunity defense and the Honduran defendants may be beyond this Court's jurisdiction. Thus, dismissal would serve the United States' interest in international comity. (Id.) Again, the Court finds this explanation to be a rational reason to dismiss the case.

## V. Conclusion

Upon consideration of the motion and brief in support, response, reply, additional briefing, and the evidence and arguments presented at the hearing, the motion to dismiss is GRANTED.

DONE and ORDERED this 30th day of January 2020.

                                                **s/ Kristi K. DuBose**
                                                **KRISTI K. DuBOSE**
                                                **CHIEF UNITED STATES DISTRICT JUDGE**